Rob Hawley for Appellant. Starting point for my argument on the improper joinder is Dean v. California, it's a 9th Circuit case. In that case there is no evidence. Do you have a Supreme Court case? I beg your pardon? Do you have a Supreme Court case? It's habeas on a state decision. United States v. Lane, I think it's put in page 16 of my opening brief. Lane is the Supreme Court case? Yes, as far as Ms. Joinder is concerned. It's very permissive. True. But at least my starting point on Dean is Dean v. Calderon, and in that case there is no evidence of cross admissibility. There is no limiting instruction. A strong case was hooked up with a weak case, and the weak case got reversal. Here, in Appellant's case, there is no evidence of cross admissibility, no limiting instruction. We had two weak cases hooked up. You have an October 1998 murder that was so weak with all the witnesses' credibility baggage that without putting any evidence on, any witnesses on, he got a second-degree murder out of a first-degree murder prosecution. And then in the January 1999 prosecution, he was charged with four counts of attempted first-degree murder and was acquitted of all four counts, acquitted across the board of all LIOs except two of the four counts where he got the LIO conviction of assault with a firearm. What does LIO mean? Lesser Included Offense. I'm sorry. So, just based on that verdict alone, it shows the weakness of the prosecution case. The respondent argues that this shows the jury's ability to compartmentalize the facts, and I would argue that the contrary. It shows the weakness of the prosecution case, and had some evidence of self-defense been presented on... Yes, sir. Counsel, the judgment about whether or not you've got a weak case and the question of possibility has to be decided at the beginning of the case, doesn't it? It can't be decided at the end. It's difficult to point to a jury and say, well, the jury acquitted him on the first-degree murder. We only got the Lesser Included Offense. Therefore, it was a weak case. Therefore, it should not have been joined. The judge's decision as to joinder has got to be made at the outset. That is true, but in California, you can make a joinder throughout the course of the trial. Simply because we have the ability of hindsight right now, I think on a habeas, we can argue the weakness of the case. Why would you argue that it's a weak case when you have a number of eyewitnesses to the action here? There's clearly some dispute here, but it's also clear that you had eyewitnesses in both cases, and particularly as to the Valdez. It was the Valdez, right? It's the first one? The first one, the murder, yes. Right, on the bicycle. Particularly as to Valdez, that looks like a pretty solid case. A blocker incident's got more witnesses, and it looks like a little more chaotic. But it's hard to say that your guy's not present firing a gun in this neighborhood, and he was in a place where he really didn't belong. Your Honor, I do hear you, and obviously, I have to argue there are two weak cases, because if it's a weak case connected with a strong case, according to Bean, the weak case gets a reversal. We're still stuck with a strong case, i.e., gets 41 to life. So my argument, and I hear you as far as the eyewitnesses are concerned, but if you read the transcripts, I think it's pretty clear, based on the excerpts of record, we have two witnesses. One's an habitual liar. He's a convicted felon, a robbery, 245A, 245, that's a felony assault. He is also, at the time, he was ingesting an alcohol. This is Valdez? This is the murder case. The Valdez case. Yes. I'm addressing that. I'm talking about the credibility baggage. Counsel, I'm having trouble following what you're saying right now in terms of how it links up to the standard we have to apply. It's not an insufficiency of evidence case under Jackson, and of course, it couldn't serve. It's a Miss Joinder case. Miss Joinder, it just doesn't matter what California law is under 2254, and it just doesn't matter whether there's an abuse of discretion. All that matters is Supreme Court authority. The Supreme Court says in your Supreme Court authority, United States v. Lane, that improper joinder does not, in itself, violate the Constitution. Rather, Miss Joinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. I can't see that here because it looks to me as though, at least the judge looking at it at the outset, as Judge Bybee points out he has to, would see on the first one, it looks like a cold-blooded shooting of a wrong gang, and at the second one, a spraying of bullets on people leaving a party because he wasn't invited to the party. It seems like they'd be intertwined. The gang affiliation bears on both. The motivations would quite possibly bear on both, and if one of them is weak, it'd tend to weaken the other one. It's not as though you're tried for tax evasion plus having sex with an eight-year-old girl, and the sex with an eight-year-old girl is so disgusting that the jury's going to convict on the tax evasion without even thinking much about it. I don't understand how you get into that footnote in United States v. Lane here. Well, I think it is so prejudicial because when you consider the credibility baggage, and again, if these were honest and credible people who got out, I can see it's overwhelming, but I think that's a myopic approach. Why is that so prejudicial as to deny a Fifth Amendment right? All you have to do, the more witnesses the government puts on, the more chance you have to prove that one of them's a liar, and once you can taint the government's case by proving that one of their witnesses is a liar, it may be as good for you as the fact that two crimes are charged is good for them. But in this case, because it should not have been joined, if the court feels it was a proper joinder, I lose. There's no question about it. I don't even think it matters whether it's a proper joinder. I think what matters is whether assuming a misjoinder, it resulted in prejudice so great as to deny the defendant his Fifth Amendment right to a fair trial. Well, I mean, as a result of those joinder, we have all these witnesses coming in. Number one, you have a prosecutor given the green light to argue a path of violence, a path of destruction, constantly pulling guns out of people. None of that argument would have been permissible had they been tried separately. Also, you have a... Why not? Because it's basically inadmissible character evidence. If you went to a... If you prosecuted him on the murder charge, I'm talking about the early charge on October 1998, Handy Booker wouldn't have been allowed to come in. He's one of the, quote, victims in the January 1999 attempt to murder, come in and express his opinion that Mr. Young had a reputation for carrying guns, and the prosecutor would not have been allowed to argue that he has a path of destruction because it would only have been one incident that the appellant would have been faced with as far as defending against. So your argument basically is that the joinder prejudiced the trial of the murder case, not the other way around, right? I got to argue both because... And I have to argue them both being weak because there's one's a strong case and one's a weak case, at least according to the Supreme Court. Does the Supreme Court say it violates due process to join two weak cases? Well, no. It's not automatic. You have to look at all the facts and how they played out in order to make that evaluation as to whether or not it's a violation of due process. And I'm arguing the way the facts played out in this case, when you talk about the weakness of these two cases, I think it is a violation of due process because if he would have defended separately against these two cases, he probably would have gotten a better result. Remember there's an alibi issue out there that was not presented, and there's also a self-defense instruction on the attempt to murder case that went absolutely... Let's say a word about the self-defense. There has been no hearing on the allegation that self-defense should have been raised, if I understand correctly. There has been no hearing, just the allegations that this pro per submitted and is written. That was rejected because it wouldn't have made sense or there's a good tactical reason or what? How do we know that? Why was that claim rejected? Well, down below, I'm talking to the district court and the magistrate's report and recommendation felt it wouldn't make a difference, and I can't see how it would not have made a difference given the fact that he went to trial, it started out with four counts of attempt to murder. He won two of those four counts across the board, not even a lesser-included offense, and got hit up on two counts of a lesser-included offense of assault with a firearm. So had the evidence of self-defense was out there and available to counsel as far back as February 21st, 2000, and remember this trial took place on February 15th, 2001, one full year later, after the appellant is getting up there complaining about the lack of his attorney's efforts to develop this case of self-defense, the lack of his attorney's efforts to get Mr. Green to appear to bolster his case of self-defense, I think there certainly is a reasonable probability he would have gotten a better verdict had the jury heard something about this self-defense that was out there. If counsel had brought the case of self-defense, wouldn't Mr. Green have had to take the stand? No, if he got Mr. Green in there to say, handy blocker, cranked out 12 to 15 shots at it first, that's enough in and of itself. A defendant does not have to get up and testify he was a defense of self-defense. If he had Mr. Green coming in there and saying it was the other side that cranked off 10 to 15 rounds, that's enough to justify an instruction and that's enough to justify an argument on self-defense. Weren't there a bunch of other party guests who testified that everybody was just going out, everything was fine, and then the defendant and some others started shooting? There were four party guests, the four victims. And again, even in spite of the fact they got on the stand and testified under penalty of perjury, the jury completely disregarded at least two of those people, and then disregarded Blocker and his sister as far as the attempt murder is concerned, and found guilty of a lesser included offense. So sure, they did testify. I don't know what happened in court, but evidently the record seems a little bit stronger than what actually played out as far as the jury murder is concerned. And that graphically underscores the weakness of these cases. Thank you, counsel. Although your time is up, I assume you'll get one minute for rebuttal. Thank you. Counsel? May it please the Court, Daniel Rogers, Deputy Attorney General for Respondent. One point to make regarding the joinder. As counsel identified, Lane is the controlling United States Supreme Court precedent in this case. And I would remind the Court, as was pointed out on our briefing, the observation of the U.S. Supreme Court in Yarborough v. Alvarado, that the more general a rule of constitutional law announced by the United States Supreme Court, the more leeway a state court has in applying that rule. Lane is the most general sort of rule. And in this case, obviously we disagree with counsel's characterization of these as two weak cases. These were two strong cases with multiple eyewitnesses. As to the assault, we cannot forget that Mr. Young was seen hiding a weapon used in the shooting immediately after the shooting, that he prevaricated with officers regarding his possession of that weapon, et cetera. On this, with that evidence, is... He prevaricated the officers. You mean he lied to the police? He lied to the police, yes. He changed his story two or three times with the officers trying to explain his possession of that weapon. First saying he didn't possess it. What about opposing counsel's argument that the party case was weak because the jury obviously disbelieved, in his view, some of the witnesses? Well, obviously in both cases, the jury believed that an appellant was present, that an appellant was present, that an appellant was convicted of assault with a deadly weapon rather than attempted murder could indicate that the evidence of intent was perhaps absent, that the jury... Oh, so it's not that the jury just dumped them out altogether, just went for assault with a deadly weapon instead of attempted murder? As to Blocker and Laquanna, as to two of the victims. On two of them? Right, two of the other victims, yes. And the other two? The other two, there were four victims. Two were acquittals? Two were acquittals, I believe, yes. Would it be ADW if he was just spraying bullets randomly at the crowd leaving the party? Yes, I believe so. So if the jury thought he didn't really care whether he killed anyone, he would have hit them and killed them if he wanted to, he was just spraying bullets? Right, and we must remember with all of the shots fired, I believe Handy Blocker was the only person who was actually hit with this fusillade, if you will, although Charles Green did suffer some injuries and Mr. Young himself. So maybe he got the acquittals because he didn't miss with Lopez? I don't believe so. Was Lopez the guy on the bicycle? Lopez was the guy on the...  Valdez, yes, I'm sorry. Hit him with both shots? He hit him multiple times, yes, in that case. And I don't believe that the evidence in this case supports the contention that the jury relied on the evidence of the assault and sort of bootstrapped the murder to it. I mean, that's speculative on this record. The state court rejected that interpretation impliedly and I think that is reasonable. With regard to the ineffective assistance of counsel claim, this was a trial counsel who provided a very effective defense. He challenged the eyewitness identifications, he challenged the prosecution evidence quite successfully and the results seemed to bear that out. The self-defense claim essentially, at excerpts of record 386 and 389, we see defense counsel specifically refer to some communication with Mr. Green, specifically make reference to his knowledge of a possible self-defense. What is absent in this case is any explanation as to why counsel ultimately didn't pursue self-defense. I'm a little surprised that the prosecutor didn't join the defense and request an evidentiary hearing. It might be amusing and enlightening to hear the lawyer explain just why he didn't put on a self-defense theory for the party shooting. Possibly amusing and enlightening, but unnecessary in this instance, Your Honor. I think, again, it is the burden of petition on habeas corpus, and particularly in light of the Strickland case, to overcome that strong presumption that Strickland recognizes of effective assistance of counsel. There are any number of tactical reasons one can posit for why counsel would have pursued a strategy, which in hindsight we can see was quite successful at trial. This was a case- The self-defense only applies to the second charge, correct? Yes, as to the assaults. There are a lot of obvious tactical reasons not to put it on, such as it being an obvious loser, which is what the judge thought. Yes. Nevertheless, it might have been kind of nice to have a record where the defense lawyer said, you think I'm out of my mind? Well, again, it might be nice, but- We don't really have evidence from the defense lawyer about why he didn't put it on, right? Typically, we would need a declaration, something like that, and it would be incumbent on the petitioner, in this case, to provide that for the court. A petitioner's failure to do so, that is quite easy to do. One can- I don't know why that wasn't done in this case. Why would self-defense- Presumably, the self-defense claim would be somebody else started the shooting. Yes. And that's not really an inconsistent posture with the rest of the case, is it? Someone else- Yeah. We know there's gunfire, and the idea would be, why didn't counsel put in a self-defense case that, yes, my client shot, and there was shooting and everything else, but it was all self-defense. There was no evidence other than Mr. Green's declaration that anyone other than Mr. Young or someone in his group of fellow gang members was shooting. No one saw other than Mr. Green in his declaration. That's an excerpt of Record 190. Why didn't Mr. Green testify? We don't know. We don't know. Was he available? I can't recall specifically if he was one of the individuals in custody, but presumably he was available. If Green wasn't available, would Young have had to have taken the stand? If Green was not available in order to establish a claim of self-defense, yes. Young would have had to have taken the stand. If he had taken the stand, then he could have been asked about the Valdez incident as well, right? Yes. And I think to present a credible claim of self-defense... Again, remember, to establish perfect self-defense under California law, he would have to establish both an objective fear and subjective belief. And to do that, is it legally possible to establish it solely through Green's testimony? I suppose. Is it practically possible to do that? Doubtful. Would a jury hearing solely from Mr. Green buy this self-defense argument, specifically when he's impeached with his familial relationship with the defendant, his own gang membership, et cetera? The joinder doesn't help any in that. The joinder perhaps... How do you make self-defense when there's this other murderer out there? The joinder perhaps doesn't make the self-defense claim any easier, but neither does the fact that it made a weak defense possibly slightly more difficult to present, rise to the level of a due process violation, or rise to the level where a state court is deciding contrary to Lane that no due process violation occurred in the case. Was the argument in the second charge, the defense argument basically, that there's just no evidence that my client was shooting at all? My recollection of the argument was that essentially the evidence was confused, that there were multiple shooters, that there were at least two guns used, that the eyewitnesses were unclear as to who was shooting, that type of thing, yes. And unless the court has any questions, I see that I'm right at my time. Thank you, counsel. We will submit. Counsel? As far as self-defense is concerned, there are multiple cartridges found at the scene, I believe 16, a couple different guns. Also Mr. Young was hit, he was shot, took a bullet in the thigh. Also Mr. Green, the self-defense person who was out there. No hole in his clothes though, right? Well, there's a hole that caused the officer some sort of factual support to say perhaps it was accidentally discharged. So there was a hole, but I guess it didn't line up perfectly, so the officer, over objection, was allowed to give his opinion that perhaps it might have been self-inflicted or accidental discharge. So as far as the jointer is concerned, it was powerful standing alone, even without his testimony, I'm talking about Mr. Young's testimony, supporting a self-defense. If he went on a stand because of this improper jointer arguing, he would have been crossed out about this prior murder case, which certainly would have been devastating to his credibility as well as his defense. As far as any tactical reason for failing to call Mr. Green, I just want to remind the court that as far back as February 21, 2000, Mr. Young was yelling and making his beefs known to the trial judge about his attorney's inaction on getting Mr. Green involved in presenting his self-defense claim. And over a year later, this trial takes place, no self-defense and no Mr. Green. So under those circumstances, and when you consider the declaration, which is notarized under penalty of perjury, obviously it's reasonably probable that he could have gotten a better result had the jury heard that evidence. And I can see that the attorney down below did get a good verdict. I mean, you can't argue with a second degree. You can't argue with the results he got on the four counts of attempted murder. But that's not the yardstick. The yardstick is whether Mr. Young could have gotten a better verdict had all this evidence the jury never heard been heard by the jury. And that he did not. And assuming some evidence was alibi, was presented on the murder, and some evidence of self-defense was presented on the second batch of charges, he probably would have gotten a better result. And that's the standard. Thank you, counsel. Young v. Filer is submitted.
judges: Canby, Kleinfeld, Bybee